IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILTON IRVON LOMBARD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:22-cv-328-ECM-JTA |
| | ) | (WO) |
| DARLENE MARIE LOMBARD | ) | |
| BAKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION AND ORDER

On March 28, 2022, Plaintiff Wilton Irvon Lombard, Jr., proceeding *pro se*, filed this lawsuit against Defendants Darlene Marie Lombard Baker and Keven R. Baker, alleging state law claims of elder abuse, negligence in performing the duties of a trustee, civil conspiracy to defraud, and intentional and negligent infliction of emotional distress. (Doc. No. 1 at 3, 13-14.)

Before the court is Defendants' Motion for Summary Judgment.[1] (Doc. No. 33). For the reasons stated below, the undersigned recommends that Defendants' motion for summary judgment (Doc. No. 33) be GRANTED, that Plaintiff's claims be DISMISSED WITH PREJUDICE, and that this case be DISMISSED.

---

[1] Defendants originally styled their dispositive motion as a motion to dismiss; however, the court construed the motion as a motion for summary judgment to the extent that matters outside the pleadings have been presented to and not excluded by the court. (*See* Doc. No. 95.) The court timely provided notice to the parties that the motion would be converted to a summary judgment motion and allowed Plaintiff an additional opportunity to respond the motion after it was so converted. (*Id.*)

Also before the court is Plaintiff's Amendment to Complaint by Addition of New Defendants (Doc. No. 80), which the court CONSTRUES as a motion to amend and as a proposed amended complaint. In addition, the court has before it Defendants' Motion to Strike Plaintiff's Amendment to Complaint by Addition of New Defendants (Doc. No. 86), which the court CONSTRUES as a brief in opposition to Plaintiff's motion to amend. For the reasons stated below, the court DENIES Plaintiff's motion to amend. (Doc. No. 80.)

## I. JURISDICTION

The Court exercises jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332. The value of Plaintiff's claims exceeds $75,000.00 and the parties are completely diverse. The parties do not contest personal jurisdiction or venue, and the Court finds sufficient allegations to support both in the Middle District of Alabama.

## II. PROCEDURAL HISTORY

Plaintiff filed this action on March 28, 2022, in the United States District Court for the Northern District of Texas. (Doc. No. 1.) After being transferred first to the United States District Court for the Northern District of California, Oakland Division, the case was transferred to this court on June 1, 2022. (Docs. No. 6, 30.) On June 16, 2022, Defendants filed a motion to dismiss, to which exhibits were attached. (Doc. No. 33.) Plaintiff filed briefs in response to the motion. (Docs. No. 44, 45.) Defendants filed a reply brief in support of their motion. (Doc. No. 48.)

In the interim, various other motions and other papers were filed and several proceedings were held to address numerous issues that have arisen in this contentious case. The court will not burden this Recommendation and Order with a full recount of those

matters here; the court will refer to those matters at appropriate points in this Recommendation and Order only if and to the extent necessary to resolve Defendants' dispositive motion.

On November 18, 2022, Plaintiff filed an Amendment to Complaint by Addition of New Defendants (Doc. No. 80), which, for the reasons stated in Section VI.F. of this Recommendation and Order, the court construes as a motion to amend. On November 30, 2022, Defendants filed a Motion to Strike Plaintiff's Amendment to Complaint by Addition of New Defendants (Doc. No. 86), which, for the reasons stated in Section VI.F. of this Recommendation and Order, the court construes as a brief in opposition to Plaintiff's Amendment to Complaint by Addition of New Defendants.

On January 19, 2023, noting that "[t]he parties have already fully taken advantage of the opportunity to present their relevant factual and legal claims, as well as any supporting evidence" with respect to the motion to dismiss, the court notified the parties that, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, the motion to dismiss would be construed as a motion for summary judgment. (Doc. No. 95.) After notifying the parties of the summary judgment rules, the right to file affidavits or other materials in opposition to the motion, and the consequences of default, the court allowed time for Plaintiff to file an additional response brief with supporting evidence and for Defendants to file an additional reply. (Doc. No. 95 at 4-5.) The January 19, 2023 Order specifically instructed each party that they were allowed to file "one additional" brief and that "any evidentiary material" was to be filed simultaneously with that brief. (Doc. No. 95 at 4-5 (emphasis in original).)

On January 25, 2023 Plaintiff filed a Reply to Order Changing Motion to Dismiss to Summary Judgment in which he stated, "I respectfully agree with this honorable court that adequate arguments have been made on both sides" and in which he further responded to Defendants' summary judgment motion. (Doc. No. 97.)

On January 30, 2023, Defendants filed a summary judgment reply brief[2] in which they not only replied to Plaintiff's arguments, but they also raised new arguments and introduced new evidence and additional factual allegations, and they attached approximately 270 pages of exhibits. (Doc. No. 100.)  In this Recommendation and Order, the court declines to consider new arguments raised for the first time in Defendants' reply brief that were not presented in the original dispositive motion and that are not responsive to Plaintiff's arguments on summary judgment. As Defendants' counsel surely well knows, a reply brief is not the appropriate place for raising new arguments. *See*, *e.g.*, *Howard v. Metro. Atlanta Rapid Transit Auth.*, No. 114CV03667LMMAJB, 2016 WL 10988790, at *7 (N.D. Ga. July 14, 2016), *report and recommendation adopted*, No. 114CV03667LMMAJB, 2016 WL 10998309 (N.D. Ga. Sept. 30, 2016) (collecting cases); *Puckett v. McPhillips Shinbaum*, No. CIVA206CV1148-ID, 2008 WL 906569, at *24 n.16 (M.D. Ala. Mar. 31, 2008) (declining to address "grounds for summary judgment which Defendants raised for the first time in their reply brief"); *Fisher v. Ciba Specialty Chemicals Corp.*, No. CIV.A. 03-0566-WS-B, 2007 WL 2302470, at *4 (S.D. Ala. Aug.

---

[2] Defendants styled their brief as "Defendants' Response to Plaintiff's Reply to Motion for Summary Judgment." (Doc. No. 100.) However, as noted, Defendants were ordered to file a "**reply brief** and any additional evidentiary material Defendants wish to submit **in support of their motion**." (Doc. No. 95 at 5 (emphasis added).)

8, 2007) (holding that "it is generally improper to raise new arguments for the first time in a reply brief" because "[i]t would be unfair and improper to consider these newly raised arguments at this time, when defendants could have raised them earlier and plaintiffs have not had an opportunity to be heard on them"). *Cf. Thompkins v. U.S. Xpress, Inc.*, 611 F. App'x 672, 673 (11th Cir. 2015) ("[W]e do not address matters raised for the first time in a reply brief." (citing *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008)). In any event, had they been considered, the new arguments and associated evidence supplied by Defendants for the first time in their reply brief would have had no effect on the outcome of this Recommendation and Order.

On February 21, 2023, without leave of court, Plaintiff filed an Additional Reply (Doc. No. 105) responding to new arguments raised or fleshed out for the first time in Defendants' summary judgment reply brief. The court has not considered Plaintiff's Additional Reply brief because it was filed out of time, without leave of court, and in direct contravention of the January 19, 2023 order.[3] In addition, the court did not consider Plaintiff's Additional Reply brief because it addresses matters in Defendants' summary judgment reply that also were not considered by the court because they were raised or

---

[3] The January 19, 2023 Order stated: "Plaintiff shall not file multiple responses; a maximum of <u>one</u> response brief will be accepted, and any supporting evidentiary material must be filed on the same day as the response brief." (Doc. No. 95 at 4.) Though Plaintiff's brief does not comply with the briefing instructions in the January 19, 2023 Order, **Defendants are advised not to file yet another motion for sanctions.** Plaintiff should have obtained leave of court before filing his Additional Reply, but he did limit his Additional Reply to matters that were raised or fleshed out for the first time in Defendants' reply brief. Had the court been inclined to consider those matters in Defendants' reply brief, allowing Plaintiff an opportunity to respond to them would have been appropriate.

developed for the first time in a reply brief. In any event, had those matters and Plaintiff's Additional Reply been considered, they would have had no effect on the outcome of this Recommendation and Order.

Defendants' motion for summary judgment and Plaintiff's motion to amend are now under submission and ripe for disposition. Numerous other motions are pending;[4] however, the court will dispose of those other motions promptly by separate order.

### III. PLAINTIFF'S ALLEGATIONS

In his Complaint, Plaintiff alleges that his sister, Defendant Darlene Marie Lombard Baker, and her husband, Defendant Keven R. Baker, conspired to exert undue "emotional and psychological" influence on Plaintiff's father, Wilton Irvon Lombard, Sr., ("Lombard, Sr.") so that, out of an estate worth approximately one million dollars, Plaintiff received only $12,000.00 from Lombard, Sr.'s living trust after Lombard, Sr.'s May 13, 2018 death. (Doc. No. 1 at 8, 12.) Plaintiff further alleges that, as trustee of the living trust, Defendant Darlene Baker negligently failed to provide an accounting to Plaintiff of the trust's assets and of the distribution of those assets. (*Id*. at 13.)

---

[4] *See* Defendants' Motion to Strike Plaintiff's Affidavit of Mary Crabtree (Doc. No. 71); Defendants' Motion for Protective Order, Sanctions, and Request for an Immediate Hearing (Doc. No. 75); Plaintiff's Motion to Sanction (Doc. No. 78); Plaintiff's Motion to Consider Proposed Order (Doc. No. 81); Plaintiff's Motion to Strike (Doc. No. 89); Defendants' Motion to Strike Plaintiff's Submitted Affidavits and Supplement to Motion for Protective Order (Doc. No. 91); Plaintiff's Motion to Compel Discovery and Pretrial Settlement Conference (Doc. No. 96); Defendant's Renewed Motion to File Documents Under Seal (Doc. No. 102); Plaintiff's Reply to False, Defamatory, Stigmatizing, and Injurious Allegations and Motion to Seal (Doc. No. 103); and Plaintiff's Reply to False, Defamatory, Stigmatizing, and Injurious Allegations and Motion to Strike and Motion to Seal (Doc. No. 104).

Plaintiff "maintain[s] [Defendants] committed **Civil Conspiracy to defraud me** of my rightful inheritance by manipulating my aging father, thus also engaging in **Elder Abuse** and **Intentional Infliction of Emotional Distress and/or Negligent Infliction of Emotional Distress.**" (*Id.* at 12 (*sic*).) In addition to asserting claims against both Defendants for "Elder Abuse," civil conspiracy to defraud, and intentional and negligent infliction of emotional distress,[5] Plaintiff also asserts a claim for negligence in performance of the duties of a trustee against Defendant Darlene Baker for failure to provide an accounting statement showing a list of the trust's assets. (Doc. No. 1 at 13.)

### IV. UNDISPUTED FACTS

On October 26, 2012, Lombard, Sr., completed a declaration of living trust ("the Trust"). (Doc. No. 33-1 at 2.) The Trust named Lombard, Sr., as trustee until his death, at which time Defendant Darlene Baker was to become the successor trustee. (*Id.*) The Trust provided that, upon the death of Lombard, Sr., and after payment of debts of the estate, funds would be distributed to the Trust's beneficiaries, but "[n]o Distribution of Trust Funds to Beneficiaries shall be made until real estate and personal property belonging to the Grantor are sold or disposed of, if at all possible, and the proceeds put in this Trust." (*Id.* at 3.)

---

[5] As grounds for his claims of intentional infliction of emotional distress, Plaintiff alleges that Defendants caused him distress by causing him to receive less of his father's estate than Plaintiff "hope[d]" and expected to receive and to which Plaintiff felt entitled as his "rightful" share. (Doc. No. 1 at 14.)

The Trust named Plaintiff as one of its beneficiaries following Lombard, Sr.'s death

and, regarding assets to be distributed to Plaintiff, it provided as follows:

> **WILTON I. (VON) LOMBARD, JR.,** my son, shall receive a distribution
> of $12,000. This distribution is to be paid in monthly payments of $1,000.
> Trustee shall have sole prerogative to provide reasonable funds for this
> beneficiary if sickness or emergency situations arise. Without going into
> detail, this son has told outrageous things on his father and has not been
> trustworthy in business dealings with him.

(*Id*. at 4.)

Plaintiff concedes that he has already received in full the $12,000 due him in $1,000

payments under the terms of the Trust. (*Id*. at 15.)

The Trust also provided for Lombard, Sr.'s five grandchildren to "each receive a

distribution of $5,000.00 to be paid in a lump sum when distributions can be made under

this Trust." (*Id*.)

The Trust specified that its "validity … shall be governed by the laws of Alabama"

and that "no accountings or reports shall be required of the Trustee." (*Id*. at 5.)

The Trust also contained the following incontestability clause:

> I, the undersigned, **WILTON I. LOMBARD, SR.,** … have carefully and
> prayerfully prepared this document under some trying conditions and
> circumstances. There will perhaps be some named in this Trust that will not
> be contented or satisfied with my decisions. In the event that any named
> Beneficiary named herein attempts to contest or challenge this Trust or any
> parts thereof in a Court of Law, that Beneficiary will automatically forfeit
> his or her distribution.

(*Id*. at 5.)

Lombard, Sr. passed away on May 13, 2018. (Doc. No. 100-23.) It is undisputed that Plaintiff is not the duly appointed executor, administrator, or representative of Lombard, Sr.'s estate.

On July 4, 2018, via email, Defendant Darlene Baker provided Plaintiff with a copy of the Trust document and a notice of existence of revocable trust. (Doc. No. 33-2.) Defendant Darlene Baker requested that Plaintiff "let [her] know that [he was] able to open both documents." (*Id*.) Later the same day, Plaintiff responded:

> Yes, I can read both documents. Yes, I did tell the outrageous things that he did to me and it was all true, so help me God. If he had apologized to me personally, that is where it would have remained, but he could never admit to any wrongdoing, not once.
>
> As much as I need furniture, I don't think it prudent for me to take that bedroom furniture. Thanks for the offer.

(*Id*.)

On November 19, 2018, Plaintiff filed a complaint in the United States District Court for the Northern District of Texas against a number of defendants concerning real estate matters that have no apparent direct relation to this case. *Lombard v. Hindy*, Case No. 4-18-CV-934-0-BP (November 19, 2018, N.D. Tex.) (Doc. No. 1).[6] Plaintiff litigated that case, submitting numerous *pro se* filings (*e.g.*, Docs. No. 3, 18, 19, 25, 26, 29, 33, 38, 40, 44, 45, 50, 51, 54, 57, 60, 61, 69, 70, 83, 92, 95, and 98 in Case No. 4-18-CV-934-0-

---

[6] Defendant has placed documents from *Lombard v. Hindy* in the record. (*E.g.*, Doc. No. 33-5.) The court takes notice of the pleadings, motions, and proceedings in *Hindy* not for the truth of the matters asserted in them, but for the fact of the existence of the litigation and of the related filings. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *see also Hayden v. Vance*, 708 F. App'x 976, 979 (11th Cir. 2017) ("The district court was permitted to take judicial notice of documents filed in other court cases.").

BP (N.D. Tex.)) and attending court proceedings *pro se* (*see* Doc. No. 63 in Case No. 4-18-CV-934-0-BP (N.D. Tex.).) Because Plaintiff filed the case *pro se* on his own behalf and on behalf of a corporation, the *Hindy* court advised him that, because he was not a licensed attorney, he could not represent the corporation *pro se*, and the court allowed him time to obtain an attorney for the corporation.[7] (Doc. No. 63 in Case No. 4-18-CV-934-0-BP (N.D. Tex.) (minute entry).) On July 31, 2019, the case was dismissed in accordance with a settlement reached by the parties. (Doc. No. 107 in Case No. 4-18-CV-934-0-BP (N.D. Tex.); Doc. No. 33-5 (this case)).

## V. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Palm v. U.S.*, 904 F. Supp. 1312, 1314 (M.D. Ala. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing

---

[7] In *Hindy*, an attorney appeared on Plaintiff's behalf shortly before the case was dismissed pursuant to the parties' settlement agreement. (Doc. No. 104 in Case No. 4-18-CV-934-0-BP (N.D. Tex.).)

there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e). As stated by the Court in *Celotex*, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

# VI. ANALYSIS

A.     Undue Influence

The gist of Plaintiff's Complaint attacks the validity of and seeks to break the Trust to procure Plaintiff a proportional share of Lombard Sr.'s estate. Plaintiff contends that he is entitled to such relief because Defendants allegedly exerted undue influence on Lombard, Sr., to ensure that they inherited the bulk of Lombard, Sr.'s estate at the expense of Plaintiff and his brother. *See Crump v. Moss*, 517 So. 2d 609, 612 (Ala. 1987) (setting forth the elements of "undue influence in the procurement and execution of a trust agreement" as follows: "1) that there was a confidential relationship between the settlor and the beneficiaries; 2) that the beneficiaries had a dominant and controlling influence on the settlor; and 3) that there was undue activity by the dominant parties in procuring the execution of the trust.").

Specifically, Plaintiff alleges that Defendants exerted "undue and selfish influence" on his father "as he was approaching 90 years of age upon signing the Trust and was living with very questionable mental skills." (Doc. No. 1 at 3.) Plaintiff alleges that he suspects Defendant Keven Baker, "a rich Harvard trained attorney" who often "discussed legal matters with [Plaintiff's] father," drew up the Trust documents as part of this scheme to exert undue influence. (*Id.* at 2-3.) *But see Crump*, 517 So. 2d at 612 ("[T]he evidence [of undue influence] must provide at least a reasonable inference of undue activity .... Mere suspicion is not enough."). Plaintiff states that "[a] highly educated, very wealthy and intelligent married couple should not be allowed to abuse two brothers by convincing a mentally challenged, elderly father to completely write out and rudely insult one disabled

12

brother … and also grant the other brother, me, a mere pittance of $12,000 of an estate valued at about one million dollars." (*Id*. at 3.) Plaintiff states that he "simply will never believe that the words of [the Trust] … and the pittance of $12,000 were [Lombard, Sr.'s] idea" and that he is "convinced beyond a doubt that [Defendants] convinced [Lombard, Sr.] to make this decision while he was in a season of mental fatigue and impaired judgment." (*Id*. at 8.) Plaintiff states:

> The directive in the [Trust] toward me is **totally inconsistent with the attitude of the father I knew in his final years.** Someone unduly influenced him toward such an injurious action and I am convinced it was Darlene Baker with guidance from her husband, Kev[e]n R. Baker. Their testimony on a witness stand can be judged by the jury.

(*Id*. at 14 (emphasis in original).)

> Plaintiff's Complaint also includes the following allegations:

> As Mr. Baker is originally from California, and as he led his wife to return there after his law school education at Harvard, and as he has therefore lived there for most of his life of about 60 years, one must ask why did he and Darlene buy about 15 acres in rural Alabama with two lakefront homes? This occurred during the final five years of my father's life or when my father was in his eighties.

> Is it possible that the Bakers anticipated my father's death was imminent and wanted to be close by to unduly influence him and guide him during his final years? They knew of his estate valued at about one million dollars. They knew he would turn to Mr. Baker for legal guidance as he had done so in the past. How much legal guidance did Mr. Baker provide?

> How much emotional and psychological influence did Darlene offer in an attempt to maximize her portion of the estate? Someone convinced my father to totally eliminate my older brother from the estate even though he is a disabled veteran, and then convinced him to only grant me $12,000 from the estate.

(Doc. No. 1 at 8.)

Elsewhere in the Complaint, Plaintiff states:

> Upon review of this affidavit, an objective seeker of truth can only reach the obvious conclusion: my father clearly did what he could in his latter years to make up for how he treated me in the first 18 years of my life. Therefore, it is not rational that in his final living trust, he would of his own volition reduce my share of the inheritance to a pittance of only $12,000 when his estate value was about one million dollars based on an inventory he sent me a few years before his passing. I again claim he was manipulated, pressured and misled by my sister, Darlene Baker, a Harvard MBA, and her husband, Kevin Baker, a Harvard attorney. Knowing his ever decreasing mental state, they both conspired to influence him to sign a living trust completely eliminating my older brother from his rightful inheritance and granting me only $12,000 from an estate valued at close to one million dollars while Darlene was granted $150,000, plus Trustee fees, plus $5,000 for each of her five children. I have complete assurance in my heart and based on his actions toward me in his final years, that he would have never done something this condescending, heartless and mean of his own accord. The Bakers surely heavily influenced him as will be prove by the evidence.

(*Id*. at 4 (*sic*).)

Further, in response to Defendants' dispositive motion, Plaintiff again asserts undue influence:

> My father loved his sons in spite of his lack of affection. He told me more than once in his final year of living that he loved me. Would a father who loved his son grant him only $12,000 from a one million dollar estate without undue influence? I think not. I was not present when the pressure was applied from one or both [Defendants], but the results make it clear that it did happen.

(Doc. No. 46 at 6.)

Though Plaintiff does not include "undue influence" in the list of causes of action he seeks to assert, the substance of a complaint is not necessarily determined by the labels used. Plaintiff's Complaint overwhelmingly makes clear that he seeks to proceed to trial

on his allegations of Defendants' undue influence, his attack on the validity of the Trust,[8] and his contention that the terms of the Trust should be set aside so that he may receive a proportional share of Lombard, Sr.'s estate. Accordingly, the court construes the *pro se* complaint as asserting a claim for undue influence. Fed. R. Civ. P. 8(e) (" Pleadings must be construed so as to do justice."); *Torres v. Miami-Dade Cnty., Fla.*, 734 F. App'x 688, 691 (11th Cir. 2018) ("Liberal construction … means that federal courts must sometimes look beyond the labels used in a *pro se* party's complaint and focus on the content and substance of the allegations."); *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) ("'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998))); *see also Crump*, 517 So. 2d at 612 (setting out the elements of a claim for undue influence in the procurement and execution of a trust agreement).

However, as Defendants point out, any claims for undue influence are barred by the statute of limitations. The Trust provides that its "validity … shall be governed by the laws of Alabama." (*Id*. at 5.) The Alabama Uniform Trust Code, Ala. Code 1975 § 19-3B-101 *et seq*., "applies to express trusts, charitable or noncharitable, and trusts created pursuant to a statute, judgment, or decree that requires the trust to be administered in the manner of

---

[8] At one point in his Complaint, Plaintiff states that he "is not protesting the Trust itself," but immediately thereafter he states allegations of undue influence in the procurement and execution of the Trust and challenges the validity of the Trust as a legitimate expression of his father's true intentions. (Doc. No. 1 at 3.) The very heart of Plaintiff's Complaint is his allegation that the Trust's terms should be set aside on grounds of undue influence. (Doc. No. 1.)

an express trust." Ala. Code 1975 § 19-3B-102; *see also* Ala. Code 1975 § 19-3B-1204

("[T]his chapter applies to all trusts created before, on, or after January 1, 2007.").

> The Alabama Uniform Trust Code contains the following limitations period:
>
> A person may commence a judicial proceeding to contest the validity of all or part of the terms of a trust that was revocable at the settlor's death within the earlier of:
>
> (1) two years after the settlor's death; or
>
> (2) six months after the trustee sent the person a copy of the trust instrument and a notice informing the person of the trust's existence, of the trustee's name and address, and of the time allowed for commencing a proceeding.

Ala. Code 1975 § 19-3B-604.  The Trust's terms provide that,

> [a]fter the death of the Grantor, this trust becomes irrevocable. It may not be altered or amended in any respect, and may not be terminated except through distributions permitted by this Declaration of Trust.

(Doc. No. 33-1 at 2.)

Because the Trust was revocable at Lombard, Sr.'s death and irrevocable thereafter, the statute of limitations provided in § 19-3B-604 applies to Plaintiff's undue influence claims. Ala. Code 1975 § 19-3B-604; *see also* Ala. Code 1975 § 19-3B-604 (Uniform Comment) (stating that "[a] trust can be contested on a variety of grounds" including "that undue influence, duress, or fraud was involved in the trust's creation," that "[a] 'contest' is an action to invalidate all or part of the terms of the trust or of property transfers to the trustee," and that "[t]his section applies … to a revocable trust that becomes irrevocable by reason of the settlor's death").

Defendants contend that, pursuant to § 19-3B-604, the statute of limitations has expired on Plaintiff's attempt to contest the Trust. It is undisputed that, not later than July

16

4, 2018, Defendant Darlene Baker, the Trust's trustee, emailed Plaintiff a copy of the trust instrument and a notice informing Plaintiff of the trust's existence; it is also undisputed that Plaintiff acknowledged that he received and was able to open those documents on the same day. (Doc. No. 33-2 at 1.) Accordingly, the six-month statute of limitations in § 19-3B-604 began to run on July 4, 2018, and was set to expire on January 4, 2019.

Plaintiff argues, however, that the statute of limitations was equitably tolled because he suffers from a mental disability, one for which he receives social security benefits. He contends that this disability, which is ongoing, at times prevents him from "function[ing] as a normal person," and at other times, it does not. (Doc. No. 46 at 3.) However, the mere existence of a disability is not, in and of itself, sufficient to toll a statute of limitations. Under Alabama law, the party seeking to apply the doctrine of equitable tolling has the burden to prove (1) that he has been diligently pursuing his rights and (2) "'that some extraordinary circumstance stood in his way.'" *Weaver v. Firestone*, 155 So. 3d 952, 957 (Ala. 2013) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The doctrine is a narrow one and is available only "'in extraordinary circumstances that are beyond the petitioner's control and that are unavoidable even with the exercise of diligence.'" *Id.* at 957-58 (quoting *Ex parte Ward*, 46 So. 3d 888 (Ala. 2007). The extraordinary circumstance must have been one that "prevented [the plaintiff] in some extraordinary way from exercising his or her rights." *Id.* at 959 (emphasis and citation omitted).

Plaintiff has not met his burden to show that whatever disability besets him prevented him from filing suit within the statute of limitations. Plaintiff argues that his mental disability is proven by the fact that he receives social security benefits for that

17

disability, the fact that he receives mental health treatment, and the fact that he was hospitalized "several times for [his] mental health," most recently at Baptist Health Center in Birmingham, Alabama, for "acute depression" while he was "clearly incapacitated in a near catatonic state." (Doc. No. 46 at 4.) However, Plaintiff does not argue and has submitted no evidence that, during the limitations period, he was hospitalized for his alleged disability.

While Defendants acknowledge that "Plaintiff's difficulties are well taken and Defendants sympathize with Plaintiff's mental health issues," Defendants contend that Plaintiff's disability did not toll the statute of limitations because the disability did not prevent Plaintiff from exercising his rights during the limitations period. (Doc. No. 48 at 3.) They point out that Plaintiff has supplied no information or evidence as to when he was hospitalized at Baptist Health, and they submit evidence that he was hospitalized at Baptist Health in 2015, roughly three years before his father's death. (*Id*.; Doc. No. 48-1 at 1-2.)

Further, as Defendants point out, the undisputed evidence shows that whatever disability beset Plaintiff did not prevent him from seeking legal redress during the limitations period. As Defendants point out, on November 19, 2018 – a date within the statute of limitations for Plaintiff's undue influence claim – Plaintiff filed an unrelated case in the United States District Court for the Northern District of Texas (the same court in which he originally filed this action), and he did so *pro se*, not through a next friend, guardian, or even an attorney. *Lombard v. Hindy*, Case No. 4-18-CV-934-0-BP (November

19, 2018, N.D. Tex.) (Doc. No. 1).[9] Until that unrelated case was dismissed in July 2019 pursuant to the parties' settlement, Plaintiff submitted numerous *pro se* filings (*e.g.*, Docs. No. 3, 18, 19, 25, 26, 29, 33, 38, 40, 44, 45, 50, 51, 54, 57, 60, 61, 69, 70, 83, 92, 95, 98 in Case No. 4-18-CV-934-0-BP (N.D. Tex.)) and attended court proceedings *pro se* (Doc. No. 63 in Case No. 4-18-CV-934-0-BP (N.D. Tex.).)

Thus, the uncontradicted record establishes that Plaintiff, though allegedly operating under a mental disability, was nevertheless capable of filing this lawsuit and pursuing his claims within the statute of limitations for his undue influence claim. (*See also* Doc. No. 48-2 at 203 (Plaintiff's email discussing his extensive experience as a *pro se* litigant).) Accordingly, Plaintiff has not met his burden to establish the applicability of equitable tolling.

The parties also discuss the applicability of Alabama's general tolling provision, Ala. Code 1975 § 6-2-8, which provides that, "[i]f anyone entitled to commence any of the actions enumerated in this chapter, … is, at the time the right accrues … insane, he or she shall have three years, or the period allowed by law for the commencement of an action if it be less than three years, after the termination of the disability to commence an action." This provision does not appear to apply in this case, as the statute of limitations for an

---

[9] This court may take judicial notice of documents filed in other cases; however, on hearsay grounds, the court generally may not consider those documents for the truth of the matters asserted in them, rather only for the fact of the existence of the litigation and related filings. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *see also Hayden v. Vance*, 708 F. App'x 976, 979 (11th Cir. 2017) ("The district court was permitted to take judicial notice of documents filed in other court cases."). Here, the court considers the proceedings and filings in *Hindy* solely for the fact of their existence, not for the truth of the matters asserted in that action.

action challenging a revocable living trust is not found within "this chapter," *i.e.*, Chapter 2 of Title 6 of Alabama's statutory code. *See Mewburn v. Bass*, 82 Ala. 622, 629, 2 So. 520, 523–24 (1887) ("By the very letter of the exception [the tolling statute allowing suit to be filed within three years of the removal of disabilities] is made applicable to limitations provided for in the chapter in which it is found…. *Expressum facit cessare tacitum*.").

In any event, Plaintiff has not demonstrated that he suffered a period of being "insane" within the definition of that term as used in § 6-2-8, nor does he appear to even contend that he ever was "insane" as that term is used in the statute. (*See* Doc. No. 46 at 3 (in which Plaintiff takes umbrage at the term "insane" and contends instead that he suffers from a "mental disability").) *See Smith v. Dunn*, No. 2:19-CV-927-ECM, 2021 WL 433189, at *10 (M.D. Ala. Feb. 8, 2021) (noting, in rejecting the plaintiff's claims that a "mental disability" or "intellectual disability" invoked the tolling provision of § 6-2-8, that, "at the time of the writing of the statute, those found to be 'insane' were those who could not act for themselves and thus needed a next friend or guardian to act for them to sue"); *Love v. Wyeth*, 569 F. Supp. 2d 1228, 1230 (N.D. Ala. 2007) (finding that, while "very few modern cases examine the meaning of 'insanity' as used in § 6-2-8," tolling was inapplicable because the plaintiff had failed to carry his burden to establish that he "was or is 'insane' … to the degree contemplated by the tolling standard set up in § 6–2–8(a)"); *see also* Ala. Code 1975 § 1-1-1 (providing that, as used in the Alabama Code, "[t]he words 'lunatic' or 'insane' or the term 'non compos mentis' include all persons of unsound mind"); *Alabama Power Co. v. Shaw*, 215 Ala. 436, 440, 111 So. 17, 20 (1926) (noting

that insanity can be described as "derangement of the mind that deprives it of the power to reason or will intelligently," or unsoundness of mind, whether permanent or temporary).

Accordingly, Plaintiff's undue influence claim is due to be dismissed with prejudice because it is barred by the statute of limitations, which was not tolled by Plaintiff's mental disability. *See R&R Int'l Consulting, LLC v. Banco do Brasil, S.A.*, 981 F.3d 1239, 1246 (11th Cir. 2020) (affirming "dismissal with prejudice because the complaint is barred by the statute of limitations"); *Abella v. Rubino*, 63 F.3d 1063, 1065–66 (11th Cir. 1995) (affirming dismissal of claims with prejudice because the statute of limitations had run). *Cf. Levy v. NCL (Bahamas), Ltd.*, 686 F. App'x 667, 670 (11th Cir. 2017) ("[E]ven if a dismissal order expressly states that the dismissal is without prejudice, such a dismissal operates as one with prejudice if it has the effect of precluding the plaintiff from refiling her claim due to the running of a statute of limitations.").

## B.   Elder Abuse

Plaintiff asserts a claim for "elder abuse," specifically "exploitation" of his father, Lombard, Sr.[10] (Doc. No. 1 at 13.) The parties have not cited authority for the proposition that Alabama recognizes a distinct civil cause of action for damages for "elder abuse" on grounds of financial exploitation; neither have the parties cited authority for the elements of such a claim under Alabama law. [11] *See generally* Ala. Code 1975 § 38-9-1, *et seq.*

---

[10] It is apparent that this claim seeks redress for alleged exploitation of Lombard, Sr. (Doc. No. 1 at 13; Doc. No. 46 at 5 (Plaintiff's statement, with respect to his elder abuse claim, that "I will assert my standing and my right to represent my father…").)

[11] Defendant does not argue that elder abuse is not a discrete, cognizable civil claim for damages under Alabama law, nor does either party provide insight on the source for or elements of such a claim under Alabama tort law. Because Defendant has not raised this argument, and because it is

("Adult Protective Services Act") (providing protective services for adult citizens in need of protection from financial exploitation and other abuse, and imposing criminal penalties for exploitation, but providing no civil remedies for damages); Ala. Code 1975 § 38-9D-1, *et seq.*, ("Elder Abuse Prevention Act") (establishing the Alabama Interagency Council for the Prevention of Elder Abuse to develop a long-range plan for the prevention of elder abuse, including financial exploitation, but providing no civil remedies for damages); Ala. Code § 13A-6-190 ("Protecting Alabama's Elders Act") (providing criminal penalties for elder abuse, including financial exploitation of an elderly person); Ala. Code 1975 § 38-9F-1 ("Elder Abuse Protection Order and Enforcement Act") (providing for protection orders from elder abuse, including financial exploitation, but providing no civil remedies for damages).

To the extent that Plaintiff is attempting to sue Defendants for exploiting his father, and to the extent that this claim could somehow be construed as a cognizable cause of

---

not incumbent on the court to do the parties' research for them, the court will consider the arguments Defendants *did* raise with respect to this claim. The court earnestly attempts to define Plaintiff's claim in its endeavor to construe Plaintiff's complaint liberally in his favor, as is required in light of his *pro se* status. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("'[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). The court does not, however, act as *de facto* counsel for Plaintiff or rewrite his Complaint for him under the guise of liberal construction. *Nails v. AmeriCredit*, No. CIV.A. 2:10CV826, 2011 WL 310254, at *1 (M.D. Ala. Jan. 6, 2011), *report and recommendation adopted*, No. 2:10CV826-MHT, 2011 WL 304760 (M.D. Ala. Jan. 28, 2011) (holding that the leniency afforded the construction of *pro se* pleadings is not license for the court "'to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading . . . to sustain a cause of action.'" (quoting *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009))).

action under Alabama law, his allegations make clear that he is suing Defendants on this claim for exploiting Lombard, Sr., not for elder abuse and exploitation of *himself*. (Doc. No. 1 at 13 (Plaintiff's explanation of his elder abuse claim as being one for exploitation, which Plaintiff defines as "the illegal taking, misuse, or concealment of funds, property, or assets of a senior for someone else's benefit," and defining "elder abuse" as "any knowing, intentional, or negligent act by a caregiver or any other person that causes harm or a serious risk of harm to a vulnerable adult").) Because it is Lombard, Sr., whom Plaintiff claims Defendants abused, unduly influenced, and financially exploited, Defendants argue Plaintiff lacks standing to sue on claims asserting injury to his father. (Doc. No. 33 at 12; Doc. No. 100 at 37.)

"In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). This limitation, often referred to as "prudential standing," is prudential, not jurisdictional. *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1260 (11th Cir. 2014) (citing *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014)). The Supreme Court has recognized a narrow exception to the prudential rule against resting a claim for relief on injury to another where (1) the litigant has "suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute"; (2) the litigant has "a close relation to the third party"; and (3) there is "some hindrance to the third party's ability to protect his or her interests." *Powers*, 499 U.S. at 411. Lombard's submissions to the court include allegations that he was injured in fact (in that he did not receive his

23

anticipated inheritance), that he was Lombard, Sr.'s son, and that Lombard, Sr., is deceased.

The court need not determine whether Plaintiff's allegations are sufficient to establish prudential standing under the *Powers* exception because Defendants' argument is merely an unartfully-phrased – yet well-taken – argument that Plaintiff is not the real party in interest to sue on behalf of Lombard, Sr.'s estate.[12] (Doc. No. 33 at 12 ("Plaintiff lacks standing to assert a claim of elder abuse on behalf of Mr. Lombard. Plaintiff was never named as a legally authorized representative of Wilton I. Lombard, Sr. and is unable to bring elder abuse claims on his behalf as such."). *See Fisher v. PNC Bank*, N.A., 2 F.4th 1352, 1358 (11th Cir. 2021) (differentiating among the concepts of standing, capacity, and real party in interest).

It is undisputed that Plaintiff is not the legal representative of Lombard, Sr.'s estate. Rule 17(a) of the Federal Rules of Civil Procedure provides that "[a]n action must be prosecuted in the name of the real party in interest." Further, the Rule provides that "[t]he following may sue in their own names without joining the person for whose benefit the action is brought," including "an executor; an administrator; [or] a trustee of an express trust." Fed. R. Civ. P. 17(a). Plaintiff is none of these. Plaintiff takes issue with the Rule that he cannot sue on behalf of his deceased father (Doc. No. 46 at 5), but the fact remains

---

[12] To the extent that Plaintiff attempts to pursue his elder abuse claim because he is seeking to recover for his *own* injury, *i.e.*, redress for his loss of his expected inheritance through Defendants' alleged exploitation of Lombard, Sr., it is properly construed as a claim for undue influence and is due to be dismissed as barred by the statute of limitations, as explained in Section VI.A. of this Recommendation and Order.

that he is not the estate's representative and is not the real party in interest; he cannot bring claims on his deceased father's behalf.

There is another, separate reason why Plaintiff cannot bring claims that are personal to his father or his father's estate: he is proceeding here *pro se*. Generally, cases, pleadings, and motions filed by a *pro se* litigant on behalf of another are a nullity.[13] *See* 28 U.S.C.A. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008) (noting that § 1654 "appears to provide a personal right that does not extend to the representation of the interests of others").

As noted in *Iriele v. Griffin*, No. 7:20-CV-00383-LSC, 2021 WL 3400594, at *1 (N.D. Ala. June 28, 2021) (footnote omitted) (notice of appeal filed July 19, 2021), there *may* be an exception to the rule against *pro se* individuals proceeding on behalf of an estate

---

[13] The concern here is to ensure that the interests of third parties are not put at risk or irrevocably bound by representation from one who does not have the training and experience to best protect those interests, and who is not subject to the same disciplinary consequences as would be an attorney for unethical or incompetent representation. *Cf. Williams v. Valeska*, No. 1:11-CV-1067-MEF, 2012 WL 786952, at *3 (M.D. Ala. Mar. 12, 2012), *report and recommendation adopted*, No. 1:11-CV-1067-MEF, 2012 WL 1656928 (M.D. Ala. May 10, 2012) ("'Parents who are not attorneys may not bring a *pro se* action on their child's behalf—because it helps to ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents.'" (quoting *Devine v. Indian River County Sch. Bd.*, 121 F.3d 576, 582 (11th Cir. 1997), *overruled on other grounds by Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007)). Plaintiff's *pro se* attempt to represent the estate of another falls within this court's inherent authority to ensure that advocates appearing before it on behalf of others are qualified members of this court's bar who are bound to comply with the ethical and professional standards thereof, including the responsibility to provide diligent and competent legal representation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it.").

when the *pro se* plaintiff is the estate's representative and sole beneficiary and the estate has no outstanding creditors. *See also McCants v. United States*, 598 F. Supp. 3d 1342, 1346 (N.D. Ala. 2022) (holding that, "when an individual brings a claim that benefits only themselves, they may proceed *pro se*," but "[w]hen a claim will necessarily benefit a class of other parties … the individual litigates the rights and interests of others and cannot proceed *pro se*"). It is not clear whether the Eleventh Circuit would adopt the rule noted in *Iriele* and *McCants* or some other rule, and *Iriele* is currently on appeal. *See Reshard v. Britt*, 839 F.2d 1499 (11th Cir. 1988) (in which the court divided evenly on the question of whether a *pro se* plaintiff represents "his own case" when filing a suit as representative of an estate, thus providing no binding guidance on the issue).

Even so, the Complaint, on its face, does not lend itself to the inference that Plaintiff is representing "his own case," even under the rule noted in *Iriele* and *McCants*, which may or may not be or become the rule in this Circuit. He is not the estate's representative and he is not the sole beneficiary; in fact, his requested relief is merely to receive a share of the estate equal to that of his sister's. (Doc. No. 1 at 15.)

Alternatively, the statute of limitations on any cognizable claim for "elder abuse" has run. Section 6-2-38(l), Alabama Code 1975, provides: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years." Lombard, Sr., passed away on May 13, 2018. (Doc. No. 100-23.) Any elder abuse committed against Lombard, Sr., could not have occurred later than that date. Thus, the statute of limitations on any cognizable elder abuse claim for exploitation would have expired not later than May 13, 2020. This lawsuit was

filed March 28, 2022, nearly four years later. As explained in Section VI.A. of this Recommendation and Order, even if Plaintiff was suffering from a disability that at times kept him from functioning "like a normal person" (Doc. No. 46 at 3), he was capable of filing suit and litigating a case on his own behalf during the limitations period, as demonstrated by the fact that he did exactly that in *Hindy*.

Accordingly, Plaintiff's claim for elder abuse is due to be dismissed with prejudice for the following separate and independent reasons: it was not filed by the real party in interest, Plaintiff is seeking to represent another's interest *pro se*, and the claim is barred by the statute of limitations. Because the claim is time-barred by the statute of limitations, the claim is due to be dismissed with prejudice. *Cf. Levy v. NCL (Bahamas), Ltd.*, 686 F. App'x 667, 670 (11th Cir. 2017) ("[E]ven if a dismissal order expressly states that the dismissal is without prejudice, such a dismissal operates as one with prejudice if it has the effect of precluding the plaintiff from refiling her claim due to the running of a statute of limitations.").

C.     Civil Fraudulent Conspiracy

Under Alabama law, "to succeed on a civil-conspiracy claim, a plaintiff must prove a concerted action by two or more people that achieved an unlawful purpose or a lawful end by unlawful means." *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000). "It is well established that 'liability for civil conspiracy rests upon the existence of an underlying wrong and [that] if the underlying wrong provides no cause of action, then neither does the conspiracy.'" *Ex parte Alabama Dep't of Transp.*, 764 So. 2d 1263, 1271 (Ala. 2000) (quoting *Jones v. BP Oil Co.*, 632 So. 2d 435, 439 (Ala. 1993)).

Here, Plaintiff styles his claims as one for civil conspiracy to defraud. Under Alabama law, statutory and common law fraud require, among other things, a material misrepresentation or suppression of a material fact on the part of the defendant and detrimental reliance on that misrepresentation or omission on the part of the plaintiff. *See*, *e.g.*, Ala. Code 1975 § 6-5-100 ("Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action."); *Carter v. Innisfree Hotel, Inc*., 661 So. 2d 1174, 1180 (Ala. 1995) ("Fraud, as defined by [Ala. Code] § 6–5–101, includes four elements: (1) there must be a false representation; (2) the false representation must concern a material existing fact; (3) *the plaintiff* must rely upon the false representation; and (4) the plaintiff must be damaged as a proximate result." (emphasis added).)

Plaintiff does not allege that he personally relied to his own detriment on a false representation or fraudulent omission by Defendants, only that Defendants unduly influenced Lombard, Sr., and that Plaintiff was injured thereby. More specifically, Plaintiff alleges, at most, that Defendants conspired to defraud *his father*, *Lombard, Sr*., into changing the Trust to reduce Plaintiff's share of the estate, and that *Plaintiff* was injured financially and emotionally because he did not receive the share of his father's estate that he expected to receive. (Doc. No. 1 at 12 ("I maintain that [Defendants] committed **Civil Conspiracy to defraud me** of my rightful inheritance by manipulating my aging father." (*sic*; emphasis in original)).)

Thus, with respect to his civil conspiracy claim, Plaintiff is not truly alleging a claim for fraud (one involving fraudulent representation and reliance by, and injury to, the party defrauded). Rather, Plaintiff's claim for "civil conspiracy to defraud" is more properly

construed as a claim for civil conspiracy to fraudulently unduly influence Lombard, Sr., into changing the terms of the Trust, to Plaintiff's detriment. *Torres v. Miami-Dade Cnty., Fla.*, 734 F. App'x 688, 691 (11th Cir. 2018) (holding that the "[l]iberal construction" required for *pro se* pleadings "means that federal courts must … look beyond the labels used in a *pro se* party's complaint and focus on the content and substance of the allegations"); *see Crump*, 517 So. 2d at 612 (Ala. 1987) (holding that the elements of "undue influence in the procurement and execution of a trust agreement" are "1) that there was a confidential relationship between the settlor and the beneficiaries; 2) that the beneficiaries had a dominant and controlling influence on the settlor; and 3) that there was undue activity by the dominant parties in procuring the execution of the trust.").

Any claim for undue influence, in turn, is due to be dismissed because Plaintiff filed it outside the statute of limitations, as explained in Section VI.A. of this Recommendation and Order. Accordingly, any claim for civil conspiracy to unduly influence Lombard, Sr., through fraudulent conduct is subject to dismissal as well. *Alabama Dep't of Transp.*, 764 So. 2d at 1271; *see also Triple J Cattle, Inc. v. Chambers*, 621 So. 2d 1221, 1225 (Ala. 1993) (holding that "[c]onspiracy itself furnishes no civil cause of action;" thus, "a conspiracy claim must fail if the underlying act itself would not support an action").

Alternatively, to the extent that Plaintiff is attempting to assert a claim against Defendants for conspiring to defraud his father rather than a claim for conspiring to exert undue influence, Plaintiff is not the real party in interest and cannot proceed *pro se* on that claim on his behalf of his father's estate, as explained in Section VI.B. of this Recommendation and Order. Moreover, based on Plaintiff's allegations, Plaintiff's claim

for fraud reasonably would have been discoverable not later than July 4, 2018, when Defendant Darlene Baker emailed Plaintiff a copy of the Trust document and a notice of existence of revocable trust. (Doc. No. 33-2.) Any action for fraud was untimely filed after the two-year statute of limitations applicable to actions for fraud.[14] *See Lott v. Tarver*, 741 So. 2d 394, 397 (Ala. 1999) (holding that "an action alleging fraudulent misrepresentation is subject to a two-year statute of limitations" found in Ala. Code 1975 § 6–2–38(l)).

For these reasons, Plaintiff's claim for "civil conspiracy to defraud" is due to be dismissed. Because the claim is time-barred by the statute of limitations, the claim is due to be dismissed with prejudice.

D.     Negligence

Plaintiff contends that Defendant Darlene Baker was negligent in her duties as trustee because she failed to provide an accounting statement showing the distribution of the Trust's assets. (Doc. No. 1 at 13.) It appears that Plaintiff asserts this claim solely against Defendant Darlene Baker. (*Id*.)

Plaintiff argues that the provision of the Trust relieving the trustee of a duty to provide an accounting is invalid because it contradicts the Alabama Uniform Trust Code, which provides:

> Unless unreasonable under the circumstances, a trustee shall promptly respond to a qualified beneficiary's request for information related to the administration of the trust.

---

[14] As explained in Sections VI.A. and VI.B of this Recommendation and Order, Plaintiff's tolling arguments are without merit.

Ala. Code 1975 § 19-3B-813(a)(2).

The Trust provides that "no accountings or reports shall be required of the Trustee." (*Id*. at 5.) Defendant argues that, because the Trust terms state that no accounting is required, it would be "unreasonable under the circumstances," *id.*, to require Defendant Darlene Baker to provide Plaintiff one. Defendants provide no legal authority for this position. The Alabama Uniform Trust Code states that "[t]he terms of a trust prevail over any provision of this chapter except … the duty under Section 19-3B-813(a)(2) to respond to the request of a qualified beneficiary of an irrevocable trust for trustee's reports and other information reasonably related to the administration of a trust." Ala. Code 1975 § 19-3B-105(B)(8). At the very least, this statutory language would call into question Defendant's legal position about the alleged unreasonableness of requiring an accounting merely because the language of the Trust does not require it. Because Defendants have not at this time demonstrated that the terms of the Trust should prevail over the Alabama Uniform Trust Code, the court will consider Plaintiff's position that the law entitles him to an accounting.

The Alabama Uniform Trust Code defines a "qualified beneficiary" as follows:

QUALIFIED BENEFICIARY means a living beneficiary who, on the date the beneficiary's qualification is determined:

(A) is a distributee or permissible distributee of trust income or principal;

(B) would be a distributee or permissible distributee of trust income or principal if the interests of the distributees described in paragraph (A) terminated on that date, but the termination of those interests would not cause the trust to terminate; or

(C) would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.

Ala. Code 1975 § 19-3B-103(14).

Pursuant to § 19-3B-103(14), Plaintiff ceased to be a qualified beneficiary once he was no longer a distributee or permissible distributee of the Trust. Defendants argue that the Complaint contains no allegation that Plaintiff requested an accounting from Defendant Darlene Baker or that he was a qualified beneficiary when he did so. The Complaint does contain an allegation that Defendant Darlene Baker "has simply rejected my request for [an inventory of assets and an accounting] and told me to 'only communicate with her by certified mail.'" (Doc. No. 1 at 9; *see also id.* at 2 (similar allegation).) However, Plaintiff has not provided evidence that he requested an accounting. He has not provided information or evidence as to *when* he made that request (if he did). He has also not provided information or evidence regarding when he received his last $1,000 payment to complete his $12,000 distribution due under the terms of the Trust. Thus, Plaintiff has failed to demonstrate that he was a "qualified beneficiary" at the time he made the request. Ala. Code 1975 § 19-3B-103(14). Accordingly, he has not demonstrated that he was legally entitled to an accounting under § 19-3B-813(a)(2). *Celotex*, 477 U.S. at 324 (holding that, once the moving party has met its burden, "the nonmoving party [is required] to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'").

Therefore, Defendant Darlene Baker is entitled to judgment as a matter of law that she was not obligated to provide Plaintiff an accounting and to dismissal with prejudice of the claim against her for negligence in carrying out her duties as trustee. Defendant Keven Baker, who is not a trustee of the Trust, is not entitled to summary judgment on this claim because Plaintiff does not assert this claim against him.

E.    Emotional Distress

Plaintiff alleges that, because of Defendants' alleged acts of unduly influencing Lombard, Sr., to alter the terms of the Trust, he suffers from extreme emotional distress due to the loss of his expected inheritance. (Doc. No. 1 at 14.) Specifically, he alleges:

> Per my affidavit, it is clear that the egregious, unkind, unthoughtful and injurious actions of Darlene Baker, likely in association with Kevin Baker as will be determined by honest answers to the interrogatories, caused me extreme and severe emotional distress that continues to this day. To really believe my own father who gave you his own name and became ever increasingly expressive in his deeds and words of love, would then give me only about one percent of his estate at his death, is still causing me great distress to this day. I do not sleep well at night even using sleeping aids. As a result, I daily fight extreme fatigue that limits my working hours. I also remain very limited in my emotional and physical stamina thus limiting my earning ability. Even writing this lawsuit brief and thinking about the dirty deeds done to me, causes me deep grief and sadness.

> In an effort to mitigate the grief, anger and sadness, I have to discuss this matter with confidential counselors and trusted friends and my brother in an effort to make peace with the matter. Sometimes it helps and sometimes it does not help. This has been and continues to be a truly traumatic experience.

> Having come to know the pain, agony and embarrassment of being homeless a short while before my father's death, I held out hope that one day my inheritance would allow me to buy a modest home without debt. After all, I had worked for many years for my father to help him achieve his wealth in the home building industry. I am very sure that I served him for many more hours than any other sibling and that I did the dirtiest of the dirty work under his direction. Therefore, I feel I more than deserve my rightful share. And if

> I prevail with my punitive damages, I will surely compensate my disabled brother his fair share of the estate. I find it shocking that while my sister teaches Bible Studies and professes her Christian faith, she has willfully neglected her two disabled brothers in need, even when it was in her legal right to modify the terms of the Trust if she so desired.
>
> The directive shown in the Living Trust toward me is totally inconsistent with the attitude of the father I knew in his final years. Someone unduly influenced him toward such an injurious action and I am convinced it was Darlene Baker with guidance from her husband, Kevin R. Baker. Their testimony on a witness stand can be judged by the jury.

(Doc. No. 1 at 14.)

Thus, Plaintiff alleges that Defendants caused him emotional distress by depriving him of his "rightful share" of the inheritance. Defendants' acts allegedly depriving him of that inheritance by unduly influencing Lombard, Sr., to adjust the terms of the Trust to reduce Plaintiff's share to $12,000 would have occurred no later than the date of Lombard, Sr.'s death (May 13, 2018), and those acts would have been discoverable not later than the date on which Defendant Darlene Lombard sent Plaintiff a copy of the Trust document (July 4, 2018).[15] (Doc. No. 33-2; Doc. No. 100-23.) Accordingly, the two-year statute of limitations in § 6–2–38(l), Ala. Code 1975, would have run not later than May or July of 2020. *See Archie v. Enter. Hosp. & Nursing Home*, 508 So. 2d 693, 695 (Ala. 1987) ("[W]e hold that the tort of outrage or intentional infliction of emotional distress is governed by the two-year statute of limitations found in § 6–2–38(l)."). Plaintiff filed this case on March

---

[15] Throughout his Complaint and other filings, Plaintiff frequently relies on the fact that he received only $12,000 from the Trust as primary evidence that undue influence occurred. Based on the uncontradicted evidence before the court, Plaintiff would have been aware of the amount of his distribution from the Trust not later than July 4, 2018, the date on which Defendant Darlene Baker emailed him a copy of the Trust document and he stated he was able to open that document. (Doc. No. 33-2.)

28, 2022. As explained in Sections VI.A through VI.C. of this Recommendation and Order, the statute of limitations was not tolled, and Plaintiff's claims that are subject to a two-year limitations period are untimely. Accordingly, any claim for intentional infliction of emotional distress is subject to dismissal with prejudice because it is barred by the statute of limitations.

As Defendants point out, "there is no cause of action in Alabama for the negligent infliction of emotional distress" and "only the intentional infliction of severe emotional distress is actionable as a separate tort." *Flagstar Enterprises, Inc. v. Davis*, 709 So. 2d 1132, 1141 n.5 (Ala. 1997). Though damages for emotional suffering can be awarded on a claim for negligence or for other appropriate causes of action, even in the absence of physical injury, *see id.*, Plaintiff's other claims are due to be dismissed with prejudice for the reasons stated in Sections VI.A through VI.D. Accordingly, as a matter of law, Plaintiff cannot recover for negligently inflicted emotional distress incident to his other claims.

Thus, Defendants are entitled to summary judgment on Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress. Those claims are due to be dismissed with prejudice.

F.     Motion to Amend

Also before the court is Plaintiff's Amendment to Complaint by Addition of New Defendants (Doc. No. 80). The court previously informed Plaintiff that he cannot amend his complaint unilaterally at this point in the litigation, but must file a motion to amend; nevertheless, in the interest of the efficient administration of justice, the court construes Plaintiff's Amendment to Complaint by Addition of New Defendants (Doc. No. 80) as a

motion to amend and as a proposed amended complaint. In addition, the court has before it Defendants' Motion to Strike Plaintiff's Amendment to Complaint by Addition of New Defendants (Doc. No. 86), which the court construes as a brief in opposition to Plaintiff's motion to amend.

Plaintiff seeks to amend his complaint to add as Defendants his older sister, Shirley Joyce Lombard Ingram, and her son, Justin Ingram. Plaintiff does not seek to add new claims; at most, he seeks to allege that the Ingrams are liable to him because "they are clearly in alliance with [Defendants] in the conspiracy to cheat two disabled brothers out of their rightful and lawful inheritance." (Doc. No. 80 at 2.) According to Plaintiff, "Shirley [Ingram's] actions, inactions, words and deeds convince [Plaintiff] that she supports [Defendants'] shameful act of influencing a very old and mentally challenged man to disinherit one disabled son and grant another disabled son only one percent of the estate." (*Id*. at 5.) Justin Ingram is accused of siding with Defendants on grounds that he is allegedly living rent-free in a home owned by the Trust, but that he has not "earned nor deserve[d]." (*Id*. at 6.) Plaintiff contends that the Ingrams were not supportive enough of Lombard, Sr., and his wife (Plaintiff's, Shirley Ingram's, and Defendant Darlene Baker's mother) when they were elderly and in ill health.

As further proof of Shirley and Justin Ingram's allegiance to Defendants and of the nature of their relationship to Lombard, Sr., Plaintiff points out that, when Lombard, Sr., was alive, Jimmy Ingram,[16] Shirley' Ingram's husband and an associate pastor at a local

---

[16] Plaintiff does not attempt to add Jimmy Ingram as a Defendant.

36

Assembly of God church, would drive by Lombard, Sr.'s house without making a pastoral visit. (*Id*. at 4.) Lombard, Sr., allegedly "could not attend [Jimmy Ingram's] church because of the music and Jim was the Music Leader of the church." (*Id*.) Lombard, Sr. told Plaintiff that he did not like that Jimmy Ingram's church had "removed the fine grand piano and replaced it with an electronic keyboard." Lombard, Sr., also allegedly told Plaintiff that he did not like the guitar music Justin Ingram played, calling it "kerplunk, kerplunk."[17] (*Id*.)

The proposed amended complaint contains no allegations of fact from which a reasonable factfinder could conclude that Shirley and Justin Ingram were *involved in* the alleged conspiracy to unduly influence Lombard, Sr., into changing the Trust to reduce Plaintiff's share of the estate. There are no specific allegations of any acts that Shirley or Justin Ingram took or refrained from taking to participate in the alleged conspiracy to unduly influence Lombard, Sr. before his death. Rather, Plaintiff merely alleges, at most, that they are "in alliance [with] and allegiance" to Defendants. (*Id*. at 2.)

However, to the extent that Plaintiff's proposed amendment could be construed as an attempt to add Shirley and Justin Ingram as Defendants to the claims alleged in the Complaint,[18] those claims are due to be dismissed for the reasons stated in Sections VI.A.

---

[17] Plaintiff admits that he is "not sure of the meaning of that phrase" – *ie*., the phrase "kerplunk, kerplunk." Plaintiff alleges that he "could tell it was not a compliment." (Doc. No. 80 at 4.)

[18] "*[P]ro se* litigants—just as litigants represented by counsel—must comply with procedural rules and court orders*." Goldman v. Talavera Ass'n, Inc.,* No. 15-80872-CIV, 2016 WL 11544527, at *2 (S.D. Fla. July 26, 2016) (citing *Albra v. Advan, Inc*., 490 F.3d 826, 829 (11th Cir. 2007) (noting that "we are to give liberal construction to the pleadings of pro se litigants," but "we nevertheless have required them to conform to procedural rules" (citation and internal quotation marks omitted)); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (stating that a *pro se* party "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure")). Plaintiff's proposed amended complaint does not comply with Local Rule 15.1, which provides:

through VI.E. of this Recommendation and Order. Accordingly, Plaintiff's claims against Shirley and Justin Ingram are futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."); *see also Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (stating that a proposed amendment to a complaint "may be denied for futility" if the complaint, as amended, would be subject to dismissal); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) ("'[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.'" (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999))).

Although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), justice does not require that leave be given when the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that a plaintiff should be given leave to amend "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," and that leave should be freely given "[i]n the absence of any apparent or declared reason—such as … futility of amendment"); *Hall v. United Ins. Co.*

---

A party who moves to amend a pleading, document or other papers shall attach the original of the amendment to the motion. Any amendment to a pleading, document or other papers, whether filed as a matter of course or upon a motion to amend, must, except by leave of Court, reproduce the entire pleading, document or other papers as amended, and may not incorporate any prior pleading, document or other papers by reference. A failure to comply with this rule is not grounds for denial of the motion.

Local Rule 15.1, United States District Court for the Middle District of Alabama.

*of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004) ("[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.").

Accordingly, Plaintiff's motion for leave to amend (Doc. No. 80) is due to be DENIED.

## VII. CONCLUSION

Accordingly, the court CONSTRUES Plaintiff's Amendment to Complaint by Addition of New Defendants (Doc. No. 80) as a motion to amend and as a proposed amended complaint. In addition, the court CONSTRUES Defendants' Motion to Strike Plaintiff's Amendment to Complaint by Addition of New Defendants (Doc. No. 86), as a brief in opposition to Plaintiff's motion to amend.

Further, it is ORDERED that Plaintiff's motion for leave to amend (Doc. No. 80) is DENIED.

Further, the undersigned RECOMMENDS that Defendant's motion for summary judgment (Doc. No. 33) be GRANTED, that Plaintiff's claims be DISMISSED WITH PREJUDICE, and that this case be DISMISSED.

Further, it is ORDERED that the parties shall file any objections to this Recommendation on or before **March 9, 2023**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Plaintiff is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a

party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 22nd day of February, 2023.

*Jerusha J. Adams*
_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE